IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIE OWENS,
      Petitioner,

vs.                          Case No.: 3:14cv516/MCR/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (ECF No. 5). Respondent filed an answer and relevant portions of the state court record (ECF No. 15). Petitioner filed a reply (ECF No. 18).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 15).[1] Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2012-CF-000704, with one count of trafficking in illegal drugs–heroin, morphine, opium (14 grams or more, but less than 28 grams) (Count 1) and one count of trafficking

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 15). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

in illegal drugs–heroin, morphine, opium (4 grams or more, but less than 14 grams) (Count 2) (Ex. A at 39).  A jury found him guilty as charged (Ex. A at 44, Ex. C).  On November 16, 2012, the court adjudicated Petitioner guilty and sentenced him to a minimum mandatory term of fifteen years in prison on Count 1, and a term of fifteen years in prison, with a three-year minimum mandatory, on Count 2, to run concurrently with the sentence on Count 1, and with pre-sentence jail credit of 193 days (Ex. C at 157–58).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-5736 (*see* Ex. A at 83, E).  While the appeal was pending, Petitioner's counsel filed a motion to correct sentencing error, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. D at 81–97).  The trial court denied the motion, but directed the clerk of court to correct the written judgment and sentence to accurately reflect the oral pronouncement of sentence (*id.* at 98–100).[2]  The corrected judgment was rendered March 7, 2013 (*id.* at 101–04).  The First DCA affirmed the judgment per curiam without written opinion on August 30, 2013 (Ex. H).  Owens v. State, 119 So. 3d 1251 (Fla. 1st DCA 2013).  The mandate issued September 17, 2013 (Ex. I).

On October 16, 2013, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. J at 4–16).  In an order rendered November 8, 2013, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty days (*id.* at 17–18).  Petitioner filed an amended motion on December 23, 2013 (*id.* at 22–67).  The state circuit court dismissed the amended Rule 3.850 motion in an order rendered March 7, 2014 (*id.* at 68–69).  Petitioner appealed the decision to the First DCA, Case No. 1D14-1315 (Ex. K).  The First DCA affirmed the decision per curiam without written opinion on July 9, 2014, with the mandate issuing August 5, 2014 (Exs. M, N). Owens v. State, 147 So. 3d 987 (Fla. 1st DCA 2014) (Table).

Petitioner filed the instant federal habeas action on September 29, 2014 (ECF No. 1).


II.     STANDARD OF REVIEW

---

[2] The court directed the clerk to correct the judgment to reflect the following:  (1) the mandatory minimum term on Count 2 was three years, (2) the correct identification of the drug quantity charged in Count 2 was 4 grams or more, but less than 14 grams, and (3) a fine of $50,000 was imposed on Count 2.

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the

court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Richter). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Richter, 562 U.S. at 102; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III. EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7. The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal

claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  <u>Duncan</u>, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In <u>Baldwin</u>, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).

---

[4] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

> This is consistent with settled law established by the Supreme Court. . . . We
> therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more
> than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[5]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 &

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).

IV.     PETITIONER'S CLAIMS

    A.      Ground One, Issue 1:  "Petitioner was deprived of his 6th Amendment right to counsel, when counsel failed to investigate into [sic] the State's case in chief.  Counsel's failure to investigate deprived the Petitioner of his 4th Amendment right to a probable cause determination which affected the outcome of the proceedings, depriving the Petitioner of his 14th Amendment right to have a fundamentally fair proceedings [sic], had counsel properly investigated, should [sic] have and would have known that probable cause was not legally valid."

    Petitioner alleges the two drug charges were based upon two different police reports, which stated that the offenses occurred at different times and were two distinct acts (ECF No. 5 at 5, 16–17).[6]  He alleges that in the probable cause affidavit of Report No. SRS011ARR003306, the detective stated that Petitioner arrived at the predetermined location; Petitioner parked his car; Petitioner entered the undercover officer's vehicle; the drug transaction occurred at 15:57; Petitioner and the undercover officer had a brief conversation; Petitioner exited the vehicle; and Petitioner left the area (*id.* at 16).   Petitioner alleges that in probable cause affidavit of Report No. SRS011ARR003309, the detective stated that Petitioner arrived at the predetermined location; the confidential informant entered Petitioner's vehicle; Petitioner and the confidential informant parked Petitioner's car and then entered the vehicle in which the informant had arrived; the drug transaction occurred at 18:41; Petitioner and the confidential informant had a brief conversation; Petitioner exited the vehicle; and Petitioner left the area (*id.* at 17).  Petitioner alleges the detective changed her statement in her deposition and trial testimony, and stated that the drug transactions occurred

---

    [6] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system.

Case No.: 3:14cv516/MCR/EMT

"simultaneously" and at the "same time," but that two separate reports were written to protect the identity of the confidential informant (*id.* at 16–17).  Petitioner alleges if defense counsel had requested a "<u>Franks</u> hearing," counsel could have demonstrated that the allegations in the probable cause affidavits were false and thus insufficient to support a finding of probable cause to justify Petitioner's arrest (*id.*).  Petitioner further alleges that if defense counsel had filed a motion to suppress based upon the false statements in the probable cause affidavits, "the results would have been different," because there would not have been sufficient information to arrest him (*id.*).

Respondent contends the state court's adjudication of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law (ECF No. 15 at 10–14).

       1.    <u>Clearly Established Federal Law</u>

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would

have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Strickland</u>, 466 U.S. at 690); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. <u>Strickland</u>, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial,

not on appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

### 2. Federal Review of State Court Decision

Petitioner presented this claim in Issue 1 of his amended Rule 3.850 motion (Ex. J at 29–32). The state circuit court adjudicated all of Petitioner's post-conviction claims as follows:

> After reviewing the instant motion, the Court finds that the entirety of the motion is facially insufficient.  Because Defendant has been give an opportunity to amend and his motion is still facially insufficient, the Court concludes that the motion should be dismissed with prejudice.  *See* Fla. R. Crim. P. 3.850(f)(2); *Nelson v. State*, 977 So. 2d 710, 711–12 (Fla. 1st DCA 2008); *Oquendo v. State*, 2 So. 3d 1001, 1006 (Fla. 4th DCA 2008).

(Ex. J at 68–69).  Petitioner appealed the circuit court's decision to the First DCA (Ex. K).  The appellate court affirmed the decision without written opinion (Ex. M).

When a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state-law procedural principles to the contrary.  *See* <u>Richter</u>, 562 U.S. 86, 99.  The presumption may be overcome when there is a reason to think some other explanation for the state court's decision is more likely.  *Id.* at 99–100. Here, Petitioner has not rebutted the presumption that the First DCA adjudicated the merits of his

ineffective assistance of counsel ("IAC") claim.[7]  Therefore, § 2254(d) applies.[8]  *See* <u>Richter</u>, 562

U.S. at 100.

Petitioner's reference to a "<u>Franks</u> hearing" apparently refers to the Supreme Court's

decision in <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).  In <u>Franks</u>,

the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

<u>Franks</u>, 438 U.S. at 155–56 (emphasis added).  The Court emphasized that not all false statements

warranted a hearing under the Fourth Amendment:  "There must be allegations of deliberate

falsehood or of reckless disregard for the truth," and "[a]llegations of negligence or innocent mistake

are insufficient." *Id.* at 171.  Although <u>Franks</u> involved a search warrant, the United States Supreme

Court and the Florida Supreme Court have recognized that the same analysis applies to arrest

warrants.  *See* <u>Herring v. United States</u>, 555 U.S. 135, 145, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009);

<u>Johnson v. State</u>, 660 So. 2d 648 (Fla. 1995); <u>Harris v. State</u>, 438 So. 2d 787 (Fla. 1983).

The arrest warrant in this case was issued on May 6, 2011 (Ex. A at 4), based upon the

following statement of probable cause by Detective Milstead in Report No. SRS011ARR003309:

> On June 4, 2009, Willie Owens, did in Santa Rosa County violate Florida State Statute 893.13.1a1 Sale of Cocaine to wit:  members of the Santa Rosa Narcotics Unit utilized a Confidential Informant (CI) to purchase Hydrocodone from

---

[7] That the First DCA affirmed the lower court's denial of the claim as insufficiently pled does not constitute an independent and adequate state procedural-bar ruling but instead is a ruling on the merits.  *See* <u>Owen v. Sec'y for Dep't of Corr.</u>, 568 F.3d 894, 913 (11th Cir. 2009).

[8] Because the First DCA's decision in the Rule 3.850 proceeding was the last state court adjudication of the merits of the federal claim, it is that adjudication that is reviewed under § 2254(d).  *See* <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1231 (11th Cir. 2014) (citing <u>Newland v. Hall</u>, 527 F.3d 1162, 1198–99 (11th Cir. 2008)); *see also* ECF No. 15 at 4–5, 8, 13–15 (Respondent's noting same).

Willie Owens. The Cl made arrangements to purchase a number of Hydrocodone from Owens. Owens agreed to sell the Cl the Hydrocodone and wanted the CI to meet him at the Tom Thumb on Highway 87 in Milton. The CI met with Law Enforcement at a predetermined location. The CI was searched for any contraband and/or monies, none were found. The CI was equipped with an electronic monitoring device and was given a quantity of sheriff's office investigative funds. The CI, while under constant visual and audio surveillance, arrived at the Tom Thumb. A short time later Owens arrived in a white vehicle. The CI entered Owens' vehicle. The CI and Owens then parked and entered the vehicle the CI arrived in. The CI provided Owens with the investigative funds and in turn Owens provided the CI with a number of tablets (later identified as Hydrocodone using a Drug identification Bible). The CI immediately turned over the Hydrocodone to Law Enforcement. The CI and Owens bad a brief conversation. Owens exited the vehicle and left the area. The CI, while under constant visual and audio surveillance, left the area and arrived at a predetermined post buy location. The CI was again searched for any contraband and/or monies, none were found.

The FDLE lab results show that the tablets were Hydrocodone and the tablets weighed 15.6 grams, which is a trafficking amount.

(Ex. A at 4–6).

Detective Milstead filed a second report, Report No. SRS011ARR003306, which included the following statement of probable cause:

On June 4, 2009, members of the Santa Rosa Narcotics Unit utilized an undercover officer to purchase Hydrocodone from Willie Owens. Arrangements were made for the UC to purchase a number of Hydrocodone from Owens. Owens agreed to sell the UC Hydrocodone and wanted to meet at the Tom Thumb on Highway 87 in Milton. The UC was given a quantity of sheriff's office investigative funds. An electronic monitoring device was utilized. The UC, while under constant visual and audio surveillance, arrived at the Tom Thumb. A short time later Owens arrived in a white vehicle. Owens parked and entered the UC's vehicle. The UC provided Owens with the investigative funds and in turn Owens provided the UC with a number of tablets (later identified as Hydrocodone using a Drug identification Bible). The UC and Owens had a brief conversation. Owens exited the vehicle and left the area. The UC left the area and arrived at a predetermined post buy location. The UC maintained control of the purchased Hydrocodone.

The FDLE lab results show that the tablets are Hydrocodone and the tablets weighed 8.2 grams, which is a trafficking amount.

(Ex. K, attached exhibit).

Petitioner was arrested on May 8, 2012, one year after the arrest warrant issued (*see id.* at 7). Ten days later, on May 18, 2012, the State filed an information charging Petitioner with trafficking in illegal drugs in an amount of 14 grams or more but less than 28 grams (*id.* at 11). On November 13, 2012, the State filed an amended information adding a second trafficking charge of trafficking in hydrocodone in an amount of 4 grams or more but less than 14 grams (*id.* at 39).

At Petitioner's trial, Detective Tara Milstead testified that prior to June 4, 2009, she came into contact with Sarah Shields, who was working with law enforcement as a confidential informant (Ex. C at 20–43). Milstead testified that Ms. Shields stated that she could buy narcotics from Willie Owens. Milstead testified she organized a controlled buy for Ms. Shields to buy hydrocodone from the person she identified as Willie Owens. She testified that she also organized a controlled buy for Milstead herself, acting in an undercover capacity, to buy hydrocodone from Willie Owens on the same day. Milstead testified she drove herself and Ms. Shields to the controlled buy location, which was the Tom Thumb on Highway 87 in Milton, and they waited for the suspect to arrive. She testified that when the suspect arrived, Ms. Shields exited Detective Milstead's vehicle. Milstead testified that Shields made contact with the suspect, and she and the suspect returned to Milstead's vehicle. Detective Milstead testified that she introduced herself to the suspect as "TJ," and she gave the suspect $60.00 in exchange for 10 pills. Milstead identified Petitioner as the person from whom she bought the pills. Detective Milstead testified that immediately after the transaction, Ms. Shields gave Petitioner $120.00 in exchange for 20 pills. Milstead testified that a brief conversation followed, and Petitioner exited her (Milstead's) vehicle, returned to his own vehicle, and left the scene. Detective Milstead identified the pills that she purchased from Petitioner and the pills that Ms. Shields purchased from Petitioner (State's Exhibits 1 and 2), and the pills were admitted into evidence. She also identified an audio recording of the conversation that occurred during the drug transactions (State's Exhibit 3), and the recording was published to the jury. Milstead testified that as soon as Petitioner entered his vehicle and left the scene, Detective Weekley, who testified that he was conducting audio and visual surveillance of the controlled buy, notified Detective Murphey that Petitioner left, and he described Petitioner's vehicle (*see* Ex. C at 31, 60–65).

Detective Milstead testified she wrote two incident reports. The prosecutor asked, "What was the purpose of doing two reports?" (Ex. C at 42). Milstead responded, "Basically, I did two

because I did the deal and the—Ms. Shields did the deal.  And they were written in a—hopefully to protect the informant." (*id.*).  The prosecutor's examination of Detective Milstead continued:

> Q.    Now, do you the [sic] reports have a time of occurrence?
>
> A.    They do.
>
> Q.    —on there?  And does the time of occurrence on those reports reflect the correct time of the incident?
>
> A.    No, they do not.
>
> Q.    And why not?
>
> A.    The time that's on the actual report is the time that I called for—called dispatch and get [sic] a case number and that's when the time is generated on the report.
>
> Q.    Okay.  And so what times of occurrence does the report state?
>
> A.    I believe one of them states around 15:00 hours.
>
> Q.    Which is?
>
> A.    Three o'clock, sorry.
>
> Q.    Okay.
>
> A.    And the other one states six-something—six o'clock in the evening.
>
> Q.    Is that accurate?
>
> A.    No.
>
> Q.    What time approximately did the drug deals occur?
>
> A.    Based on the recording, the time 12:47 is mentioned and, based on that, and then based on—
>
> Q.    When is that mentioned?
>
> A.    Ms. Shields mentions it.  We heard it when I asked her what time did you make the phone call to him because we were just trying to see the time frame.

Q.      Okay.

A.      Of how long we've been sitting there.

Q.      Okay.

A.      And then I also looked at the arrest report.

Q.      Okay.  So approximately one o'clock?

A.      Approximately, yes.

(Ex. C at 42–43).

Sarah Shields identified Petitioner as the person from whom she purchased hydrocodone (the generic name for Lortab) during the controlled buy on June 4, 2009 (Ex. C at 49–55).  She testified she had known Petitioner for 13 years, and that his nickname was "Chill."  She identified Petitioner's voice in an audio recording of the controlled buy.  Shields testified that she agreed to act as a confidential informant to help her best friend, who was facing criminal charges.

Deputy Joel Murphey testified that immediately after Deputy Weekley described Petitioner's vehicle, he located the vehicle and stopped it at approximately 1:11 p.m. (Ex. C at 70–76).  He testified that the license plate of the vehicle was expired, and Petitioner was unable to produce identification (*id.* at 75).  Deputy Murphey testified that he arrested Petitioner, but not on the drug charges, and booked Petitioner into the county jail at approximately 1:34 p.m. (*id.* at 76).[9]  Murphey testified that Petitioner had $260.00 on his person when he was booked into the jail (*id.* at 76–77).

Petitioner failed to show either deficient performance or prejudice with respect to defense counsel's failure to request a <u>Franks</u> hearing on the truthfulness of the probable cause affidavits.  The time that each controlled buy occurred was not included in the Statement of Probable Cause section of either of the incident reports; instead, the time was indicated in the Incident Information section of each incident report (*see* Ex. A at 4–6, Ex. K, attached exhibit).  As Detective Milstead explained, the time indicated in the Incident Information section was the time she contacted dispatch to obtain a case number, not the time that the offense occurred.  Further, Detective Murphey's

---

[9] Law enforcement sought an arrest warrant for the drug charges two years after the controlled buys.

testimony as to the time Petitioner was stopped, arrested, and booked into the jail corroborated Detective Milstead's testimony that the controlled buys occurred between noon and 1:00 p.m. on June 4, 2009. Petitioner failed to show that defense counsel could have satisfied the burden of showing that either of Detective Milstead's probable cause affidavits contained an intentionally false or recklessly misleading statement. Additionally, Petitioner failed to show that defense counsel could have satisfied the burden of showing that, absent the alleged misrepresentation as to the time each drug transaction occurred, probable cause would have been lacking. *See, e.g.*, United States v. Sarras, 575 F.3d 1191, 1218–19 (11th Cir. 2009) (defendant failed to make requisite showing to warrant Franks hearing where alleged omissions from the probable cause affidavit "did nothing to strike at the core of the probable cause finding."); United States v. Bivins, 560 F. App'x 899, 905–06 (11th Cir. 2014) (unpublished but recognized for persuasive authority) (defendant had not carried his burden to show he was entitled to Franks hearing as to alleged omissions from affidavit in support of warrant to search his residence for evidence of illegal gambling activity; he did not point to any evidence suggesting that officers acted deliberately or recklessly in making any omissions, and there was more than enough truthful information suggesting that evidence of illegal gambling would be found in residence and linking defendant to that residence).

Petitioner failed to demonstrate that the result of the First DCA's decision contradicts Strickland; therefore, he failed to satisfy the "contrary to" component of § 2254(d). *See* Early, 537 U.S. at 8 (the "contrary to" component of § 2254(d) is not satisfied so long as neither the reasoning nor the result of the state-court decision contradicts Supreme Court precedent). Further, Petitioner failed to demonstrate that the First DCA's adjudication was an unreasonable application of Strickland. Therefore, he is not entitled to federal habeas relief on Ground One, Issue 1.

B.    Ground One, Issue 2: "Stale Information"

Petitioner claims that defense counsel was ineffective for failing to challenge the probable cause affidavits and arrest warrant as based upon "stale" information (ECF No. 5 at 18). He alleges the probable cause affidavits described events that occurred on June 4, 2009, but officers did not seek an arrest warrant until May 6, 2011 (*id.*). He contends if defense counsel had raised this issue, "the outcome would have been different" (*id.* at 18).

Respondent contends that Petitioner's reliance upon the legal rule of "staleness" is inapplicable to this case, because that rule relates to applications for search warrants, not arrest warrants (ECF No. 15 at 14–15). Respondent further argues the State had a four-year statute of limitations within which to bring first degree felony charges against Petitioner, *see* Fla. Stat. § 775.15 (*id.*). Respondent contends the state court's adjudication of Petitioner's IAC claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

Petitioner presented this claim as Issue 2 in his amended Rule 3.850 motion (Ex. J at 33–34). As previously discussed, the state circuit court dismissed the claim as facially insufficient (*id.* at 68–69). Petitioner argued this issue on appeal to the First DCA (Ex. K). The First DCA affirmed the lower court's decision without written opinion (Ex. M).

The Supreme Court has made clear that "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." United States v. Ewell, 383 U.S. 116, 122, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966). The statute of limitations is a specific limit "beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *See* United States v. Marion, 404 U.S. 307, 322, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971). However, due process may require dismissal of an indictment brought within the statutory period, if the government intentionally delayed prosecuting the case in order to gain a tactical advantage over the accused, and the defendant shows actual, substantial prejudice. *Id.* at 324. Although actual prejudice is a necessary element of a due process claim, it is not, standing alone, sufficient to support dismissal. *See* United States v. Lovasco, 431 U.S. 783, 790, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977). The due process inquiry must also consider the reasons for the delay. *Id.*

Applying Marion and Lovasco, the Eleventh Circuit has held that to succeed on a motion to dismiss an indictment for pre-indictment delay, a defendant must show (1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage. *See* Stoner v. Graddick, 751 F.2d 1535, 1540–43 (11th Cir. 1985). The prejudice must be such that it impairs the fairness of the defendant's trial. *See* United States v. Solomon, 686 F.2d 863, 871 (11th Cir. 1982). Moreover, the prejudice must "rise to constitutional proportions" in order to support dismissal. *See* United States v. Benson, 846 F.2d 1338, 1342 (11th Cir. 1988). The Eleventh Circuit has recognized that this

standard is an exceedingly high one. *See* <u>Tiemens v. United States</u>, 724 F.2d 928, 929 (11th Cir. 1984).

Here, the statute of limitations on Petitioner's drug trafficking crimes, both of which were first degree felonies, was four years. *See* Fla. Stat. § 775.15, § 893.135(1)(c)1.a., § 893.135(1)(c)1.b. Only three years elapsed between the date of the controlled buys and the filing of the original charging document.[10] Therefore, there was no statute of limitations defense to the charges.

Additionally, Petitioner failed to show that the State intentionally delayed prosecuting the drug charges in order to gain a tactical advantage over him. At Petitioner's trial, Detective Milstead testified regarding the delay between the controlled buys and Petitioner's arrest:

> Q.     What was the plan regarding whether or not you were going to arrest him?
>
> A.     We had a brief which lets everybody know who the suspect is, who's involved in the actual drug deal. If known what vehicles are gonna be involved. And at the time of the brief, I explained that I did not want him to be arrested—the suspect to be arrested for the drug deal. I had already had prior knowledge of—he had a suspended driver's license and also has an active warrant. So basically, I was gonna have him pulled over immediately after the drug deal and have him arrested on that, but they were not to mention anything whatsoever about a drug deal at all. . . . .
>
> A.     He was not arrested immediately for the drug deal because, like I explained earlier, sometimes we will use that informant again on something else or it's a possibility that we would buy from the suspect again so it's to protect the informant.

(Ex. C at 30–32). On cross-examination, defense counsel again questioned Detective Milstead about the delay between the offense conduct and Milstead's seeking an arrest warrant, and Milstead responded that during that time, law enforcement intended to use the confidential informant (Ms. Shields) in "a totally different type of operation" (*id.* at 45–46). Milstead admitted, however, that Ms. Shields was not actually used in any subsequent law enforcement operation.

---

[10] Two years elapsed between the date of the controlled buys and the date Detective Milstead sought the arrest warrant.

There is no evidence to suggest that the delay in charging Petitioner was the product of deliberate action designed to gain a tactical advantage over the defense. Moreover, Petitioner has not shown that the delay actually prejudiced the defense. Therefore, Petitioner failed to show that defense counsel had a meritorious basis for challenging his prosecution on either due process grounds or statute of limitations grounds, based upon the delay between the offense conduct and the filing of charges.

Petitioner failed to demonstrate that the state court's adjudication of this IAC claim was contrary to or an unreasonable application of <u>Strickland</u>. Therefore, he is not entitled to habeas relief on Ground One, Issue 2.

      C.     <u>Ground One, Issue 3: "Authentication of Evidence"</u>

Petitioner claims that defense counsel was ineffective for failing to challenge the admissibility of the two audio recordings that were admitted as evidence, one of which was a recording of the controlled drug buys, and the other of which was an audio recording of telephone conversations from the county jail (ECF No. 5 at 19).[11] Petitioner argues that counsel should have challenged the admissibility of the recordings on the ground that they were not properly authenticated, and on the ground that Ms. Shields' identification of the voice in the recordings as Petitioner's was unreliable in light of her admission that she would "do just about anything" to help her friend. Petitioner also argues that defense counsel should have sought expert analysis of the recordings to determine whether they had been tampered with.

Respondent contends that there is no requirement that an audio tape be authenticated by an expert in order to be admissible (ECF No. 15 at 15–16). Respondent argues that authentication may be provided by a party to the conversation who testifies she participated in the conversation, she had listened to the tape before trial, that the voices on the tape were the defendant's and hers, and that the tape fairly and accurately memorialized the conversation. *See* <u>Knight v. State</u>, 20 So. 3d 451 (Fla. 5th DCA 2009). Further, under Florida law, the requirement of authenticity is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

---

[11] In the audio recording of the drug transaction, Sarah Shields referred to the person who was selling the drugs as "Chill" (*see* Ex. C at 35–40). In the audio recording of the telephone calls from the jail, the inmate identified himself as "Chill" and admitted his participation in the controlled buy (*id.* at 83–85).

*See* Fla. Stat. § 90.901 (2009). Respondent contends the state court's adjudication of Petitioner's IAC claim was not contrary to or an unreasonable application of clearly established federal law.

Petitioner presented this claim as Issue 3 in his amended Rule 3.850 motion (Ex. J at 34–35). As previously discussed, the state circuit court dismissed the claim as facially insufficient (*id.* at 68–69). Petitioner argued this issue on appeal to the First DCA (Ex. K). The First DCA affirmed the lower court's decision without written opinion (Ex. M).

Petitioner failed to show that counsel had a meritorious basis for challenging the authenticity of the audio recordings. He has not proffered the existence of any reliable evidence that an expert would have opined that either recording was tampered with. Further, the testimony of Detective Milstead, Sarah Shields, and Kathy Stinson satisfied Florida's standard for authentication (*see* Ex. C at  34–40, 54, 58–59, 78–81, 83–85). *See* Knight, 20 So. 3d at 452 (citing Fla. Stat. § 90.901; McCoy v. State, 853 So. 2d 396, 404 (Fla. 2009)).

Additionally, during defense counsel's cross-examination of Detective Milstead and Sarah Shields, counsel elicited testimony that Petitioner never identified himself as "Chill," and that only Sarah Shields identified him by that name (Ex. C at 46–47, 58). Further, defense counsel extensively questioned Ms. Shields about her motive for implicating Petitioner in the crimes, including that Shields "would do just about anything" to help her best friend who was facing criminal charges, and Shields had previously dated Petitioner, but he married another woman (*id.* at 55–59). Defense counsel also elicited Shields' admission that the last time she had known Petitioner to use drugs was 2003, six years prior to the controlled buy, and she had only seen him smoke pot (*id.*).

Petitioner failed to show that defense counsel performed ineffectively with regard to challenging the authenticity of the audio recordings or impeaching Sarah Shields' testimony identifying the drug dealer and Petitioner as "Chill." Therefore, he failed to demonstrate that the First DCA's adjudication of this IAC claim was contrary to or an unreasonable application of Strickland.

### D.    Ground One, Issue 4:  "Entrapment"

Petitioner claims that defense counsel was ineffective for failing to investigate an entrapment defense (ECF No. 5 at 20–21). Petitioner alleges he was not pre-disposed to sell drugs, because he

had no history of selling drugs, and had not had a felony drug-related charge since 2001. Further, Sarah Shields admitted she had not ever purchased drugs from Petitioner, and that her only drug-related interaction with Petitioner was smoking marijuana on one prior occasion in 2003. Petitioner alleges Ms. Shields also admitted that law enforcement instructed her as to the nature and amount of drugs to request from him. Petitioner argues law enforcement permitted Ms. Shields to create a trafficking offense and a drug dealer where none previously existed, and law enforcement knew that Ms. Shields was desperate to help her best friend.

Respondent contends that defense counsel presented an entrapment defense, and the fact that counsel was not successful does not equate to ineffectiveness (ECF No. 15 at 16–20). Respondent contends the state court's adjudication of Petitioner's IAC claim was not contrary to or an unreasonable application of clearly established federal law.

Florida law provides for the defense of entrapment:

(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

(2) A person prosecuted for a crime shall be acquitted if the person proves by a preponderance of the evidence that his or her criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.

Fla. Stat. § 777.201.

Petitioner presented this claim as Issue 4 in his amended Rule 3.850 motion (Ex. J at 35–37). As previously discussed, the state circuit court dismissed the claim as facially insufficient (*id.* at 68–69). Petitioner argued this issue on appeal to the First DCA (Ex. K). The First DCA affirmed the lower court's decision without written opinion (Ex. M).

The trial transcript demonstrates that defense counsel pursued an entrapment defense. Counsel elicited testimony from Sarah Shields that prior to June 4, 2009, she had never purchased drugs from Petitioner, and her only drug-related interaction with Petitioner was smoking marijuana on one prior occasion in 2003 (Ex. C at 56–57). Counsel also elicited testimony from Shields and

Detective Milstead that law enforcement instructed Shields to ask Petitioner for a specific type and quantity of drugs, and that when Shields set up the buy, it was she, not Petitioner, who specified the quantity of drugs to be exchanged (*id.* at 47–48, 57). Additionally, defense counsel elicited testimony from Detective Milstead that at the time she planned the controlled buy with Ms. Shields, Petitioner was not the subject of any police investigation (*id.* at 46). Defense counsel argued an entrapment defense during closing argument, and she requested, and the trial court gave, a jury instruction on the defense of entrapment (*id.* at 124–30, 138–40).

Moreover, Petitioner has failed to identify any additional evidence that counsel could have discovered to support an entrapment defense. To the extent Petitioner suggests counsel should have presented evidence that he had not had a felony drug-related conviction since 2001 (*see* ECF No. 18 at 13), counsel's failure to present evidence of this fact far from deficient. The fact that Petitioner had a prior felony conviction for possession of a controlled substance (*see* Ex. A at 69–71), would not have been helpful to defend against the drug trafficking charges.

Additionally, Petitioner's argument in his reply brief that counsel should have cited case law and statutes on the law of entrapment during closing argument (*see* ECF No. 18 at 10–11, 13–14) is unavailing. It is appropriate for an attorney who does not misstate the law to relate it to the facts of the case in closing argument. *See* Kaczmar v. State, 104 So. 3d 990, 1006 (Fla. 2012) (citation omitted). However, "the correct practice does not permit counsel to read authorities to the jury, and while counsel may submit his [or her] theory of the law in written requested charges, it is the function of the trial court to charge the law applicable to the issues in the case." *Id.* (citation omitted). As previously discussed, defense counsel related the law of entrapment to the evidence in Petitioner's case, and the trial court instructed the jury on the law of entrapment. Defense counsel was not deficient for failing to cite cases and statutes in her closing.

Petitioner failed to demonstrate that the First DCA's adjudication of this IAC claim was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to federal habeas relief on Ground One, Issue 4.

      E.    Ground One, Issue 5: "Counsel deprived the petitioner of his 6th Amendment right to counsel for failing to object to an [sic] preserve issues for legitimate appellant [sic] review."

Petitioner claims that defense counsel was ineffective for failing to identify any trial court errors in the Statement of Judicial Acts to be Reviewed, thus failing to preserve any issues for appellate review (ECF No. 5 at 21–22, and Exhibit D).

Respondent contends that Petitioner failed to present this IAC claim to the state courts, thus it is unexhausted and procedurally barred (ECF No. 15 at 20–22). Respondent contends that notwithstanding the failure to exhaust, the claim is meritless, because the statement of judicial acts to be reviewed does not govern whether a judicial act is preserved for review (*id.* at 22–23).

Petitioner did not respond to Respondent's exhaustion defense (*see* ECF No. 18). Further, review of the state court record demonstrates that Petitioner did not present this issue in either of his post-conviction motions, or in his initial brief on direct appeal (*see* Exs. D, E, J at 8–18).[12] Therefore, the claim is unexhausted. Further, and any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, because an attempt to raise this IAC claim in another Rule 3.850 motion would be subject to dismissal as successive. *See* Fla. R. Crim. P. 3.850(f). Therefore, the claim is procedurally defaulted for federal habeas purposes. Petitioner has not alleged cause for the procedural default; nor has he shown he is entitled to review of this claim through any other recognized exception to the procedural bar. Therefore, federal review of Ground One, Issue 5 is unavailable.

F.    <u>Ground One, Issue 6: "Counsel deprived petitioner of his 6th amendment right to fundamentally fair proceedings to not file [sic] for Judgment of Acquittal."</u>

Petitioner claims that defense counsel was ineffective for failing to move for a judgment of acquittal ("JOA") on the grounds asserted in Issues 1 through 4, *supra* (the allegedly false statements in the probable cause affidavits as to the time of day the offenses occurred, the delay in obtaining an arrest warrant and filing charges, the lack of authentication of the audio recordings, and entrapment) (ECF No. 5 at 22–24).

Respondent contends that the arguments Petitioner faults counsel for not raising were meritless; therefore, defense counsel was not ineffective for failing to argue them in a motion for

---

[12] Although Petitioner attached a copy of the Statement of Judicial Acts to be Reviewed to his amended Rule 3.850 motion (*see* Ex. J at 17–18, 54, 78), he did not allege error on the part of defense counsel with respect to its content (*see id.*).

JOA (ECF No. 15 at 24). Respondent contends the state court's adjudication of Petitioner's IAC claim was not contrary to or an unreasonable application of clearly established federal law.

Petitioner presented this claim as Issue 5 in his amended Rule 3.850 motion (Ex. J at 38). As previously discussed, the state circuit court dismissed the claim as facially insufficient (*id.* at 68–69). Petitioner argued this issue on appeal to the First DCA (Ex. K). The First DCA affirmed the lower court's decision without written opinion (Ex. M).

With regard to counsel's failure to argue Issues 1 through 3 in a motion for a JOA (the defects in the probable cause affidavits, the pre-indictment delay, and the authentication of the audio recordings), Petitioner failed to show, for the reasons discussed supra, that defense counsel's failure to argue any of these issues as a basis for acquittal amounted to incompetence, and that there is a reasonable probability the trial court would have granted a judgment of acquittal if counsel had made those arguments. As to counsel's failure to argue entrapment as a basis for a motion for JOA, Florida's entrapment statute expressly provides that the issue of entrapment shall be tried by the trier of fact, which was, in this case, the jury. *See* Fla. Stat. § 777.201(2). Therefore, counsel was not ineffective for failing to make an entrapment argument in a motion for JOA.

Petitioner failed to demonstrate that the First DCA's adjudication of this IAC claim was contrary to or an unreasonable application of <u>Strickland</u>. Therefore, he is not entitled to federal habeas relief on Ground One, Issue 6.

G.    <u>Ground Two: "The petitioner [sic] 14th Amendment was violated by being convicted and sentenced to 15 years state prison under a [sic] unconstitutional drug statute."</u>

Petitioner contends Florida's drug trafficking statute does not require proof of mens rea and is thus a strict liability offense (ECF No. 5 at 6, 24–25). He contends the imposition of felony punishment, that is, a sentence of incarceration for more than one year, for a strict liability offense violates due process (*id.*).

Respondent concedes that Petitioner presented this claim on direct appeal of his conviction (*see* ECF No. 15 at 25). Respondent contends Petitioner cannot demonstrate that the First DCA's rejection of the claim was an unreasonable application of clearly established federal law, because the Eleventh Circuit expressly rejected this argument in <u>Shelton v. Sec'y, Dep't of Corr.</u>, 691 F.3d 1348 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1856 (2013).

Petitioner presented this claim in his initial brief on direct appeal of his conviction (Ex. E). The First DCA rejected the claim without explanation (Ex. H). Respondent is correct that the Eleventh Circuit's decision in <u>Shelton</u> forecloses the grant of federal habeas relief on this claim.

H.    <u>Ground Three: "The petitioner was denied his 14th Amendment of law [sic] due to the Equal Protection Clause, in which would be violative of due process."</u>

Petitioner contends that on July 1, 2014, after he was sentenced, Florida's sentencing guidelines for prescription pills changed, and the mandatory minimum sentence for trafficking in 14 grams but less than 28 grams was reduced from fifteen years to three years (ECF No. 5 at 8, 25–26).[13] He contends the new guidelines should be retroactively applied to him (*id.* at 8–9). He additionally contends that his 15-year mandatory minimum sentence is disproportionate to the sentences received by other defendants for more serious crimes. Petitioner concedes he did not present this claim on direct appeal or in a post-conviction application (*id.*).

Respondent contends this claim is unexhausted and procedurally barred (ECF No. 15 at 27–28). Respondent further contends that notwithstanding the failure to exhaust, the claim is meritless (*id.* at 29–30). Respondent argues that the Florida Constitution prohibits retroactive application of amendments to criminal statutes (*id.*). Additionally, Petitioner's equal protection claim is without merit, because he has not shown that he received a harsher punishment than other defendants convicted of selling the same drug in the same quantity under the law in effect at the time of his offense conduct (*id.*).

Petitioner has not shown cause for his admitted procedural default of this issue; nor has he shown he is entitled to a merits review through any other recognized exception to the procedural bar. Therefore, he is not entitled to a merits review of the claim asserted in Ground Three. Notwithstanding Petitioner's failure to exhaust this claim, the claim is without merit for the reasons stated by Respondent. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

---

[13] Effective July 1, 2014, Florida Statutes § 893.135(1)(c)2., was amended to reduce the mandatory minimum sentence for trafficking in hydrocodone in an amount of 14 grams or more, but less than 28 grams, from fifteen to three years. *See* Laws 2014, c. 2014-176, § 2 (effective July 1, 2014).

Case No.: 3:14cv516/MCR/EMT

V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the amended petition for writ of habeas corpus (ECF No. 5) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 14ᵗʰ day of October 2015.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

   Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.